Afternoon, our first case is United States of America against Daquan Al-Tariqi Alford et al. Mr. Marchioli. Thank you, your honor. May it please the court, Carlo Marchioli on behalf of the United States. May I please reserve three minutes for rebuttal? Granted. Thank you. Someone does not have a reasonable expectation of privacy in a residence where they are not permitted to live. While on parole, the Alford's were continuing to serve their criminal sentences and they continued to be in the custody of the Commonwealth of Pennsylvania. As a condition of their release on parole, they were required to live in separate authorized residences. However, instead of living in those authorized residences, they moved into the high street apartment. Mr. Marchioli That violated their parole and their residency in the high street apartment was therefore wrongful and unlawful. And as a result, they- How do we know it was unlawful? It's certainly wrongful in a moral sense. There was deception involved, but how do we know it was unlawful? Because it violated the conditions of their release. It did not create new criminal liability. That's certainly true. But it violated the conditions of their parole. But isn't that the definition of unlawful, that it violates a crime? I don't think that's necessarily true, Your Honor. I think unlawful has a broader meaning. And in the cases, when they talk about wrongful presence, courts seem to use the term wrongful and unlawful interchangeably. I think- What about our court? This court in the key case, I believe, Cortez Dutriville, used both terms. It said that the defendant in that case was at the residence wrongfully. Does it matter that in that context, there was a court order that prohibited the defendant from being at that residence that could not have been overridden by the actual owner of the residence and that his presence would result in a criminal offense? I don't think that matters. Certainly, the fact that his presence could result in a new criminal offense makes that case slightly different from this one. But nonetheless, the Alfords could still actually go back to prison for living in the High Street apartment. And there was nothing that could override those parole conditions unless parole actually provided authorization before they moved into that residence. Let me ask you a question. During- I can't remember if it was- there was a specific hearing and parole and probation was sort of testifying about the process for identifying the locations. One of the things they said they had to do was check with the landlord and get approval from the landlord to live in a location. So, I want to understand the ramifications of what you're asking us to do. Assume with me for a moment that landlord approval is a requirement. If a new landlord- if you get a new landlord, you originally moved to the apartment, there's approval, and then there's a new landlord, the old landlord's cell, there's a new landlord. New landlord has a rule that they don't allow, you know, felons, convicts to live in their apartment. So, sister or friend and Alford decide not to tell new landlord. Is that a violation that eliminates the expectation of privacy? And just so I'm clear, Your Honor, Mr. Alford did not move from that residence. He's just living there in violation of the new landlord's rules. Correct. And the- So, I don't think as a matter of parole that would be a violation of his parole. So, we would not be making the same argument in that circumstance. I think practically speaking, Mr. Alford, junior or senior, would have a conversation most likely with their parole agent about what to do in that situation. And I think the parole agent would likely work with them to find a new residence. So, if there's basically- well, I just want you to tell me if I'm right about that. Your position is if there is a- it doesn't have to be an affirmative lie to the parole officer for there to be a violation in your view? No. So, in this situation, certainly, I think the evidence supports the conclusion that the Alfords deceived their parole agents. But even if they were completely silent and just moved into this new apartment, that would still be a violation and it would still make their presence in the new apartment wrongful or unlawful. So, in my hypo, if they were just and didn't tell their parole officer that the new landlord didn't approve, does it eliminate the expectation of privacy? Not based on a violation of parole. Because again, if they're still living in their authorized residence, the residence that they were authorized to get before they were released from prison, they would not be in violation of parole. I think a separate issue is going to be- Let me just stop you there for one minute because I want to make sure we agree. In that case, they would have standing, Fourth Amendment standing, but they would have reduced privacy rights consistent with the reduced privacy rights of any parolee. In Pennsylvania. That's correct. Okay. Which would be a- So, basically, reasonable suspicion. Based on reasonable suspicion. In your hypothetical, Your Honor, I think the Alfords could run into trouble with respect to because if the landlord's saying, you no longer have authorization to be here because you're on parole, then that's a separate problem apart from a parole violation. Now, I don't think that would eliminate their expectation of privacy in that residence unless the landlord took affirmative steps to actually evict them or revoke their lease. That's what the cases seem to say. Simply violating a lease or violating new conditions of habitation would not automatically eliminate an expectation of privacy. It's the move that eliminates it for you. In this case, it does. Or in the hypothetical that you proposed, it would be the landlord actually taking steps to evict them pursuant to Pennsylvania. All right. And because it's a move, does that mean that the district court's focus on status doesn't really get at what you're getting at? You're not getting at status as a parolee. You're getting at the violation of the parole. That's exactly right. All right. One other question from the district court's opinion. He quoted your brief as saying it would be a truly anomalous result if Altarico and Altari were found to have a normal, robust expectation of privacy in the illegitimate residence they maintained and occupied as a subterfuge and means to escape the already reduced expectation of privacy that they had in their legitimate residences. Explain for us exactly how the, that Altarico and Altari would be put in a better position by being in the subterfuge residence rather than the approved residence. So I have two points, Your Honor. First, I think reasonable suspicion would still be required to search the other residence if it was going to be a parole search. So in that way, I don't think they would put themselves in a better position. But I think practically speaking, when it talks about, when you're talking about submitting to parole supervision, they would certainly be in a better position. They would have enhanced privacy. That's why they got the high street apartment. All right. So when the parole officer comes in the place, the approved residence doesn't smell like marijuana because they're smoking the marijuana in the subterfuge residence rather than, that type of thing. That didn't happen here. Right. Exactly. We do know though that there were parole meetings at the approved residences. We don't know exactly what happened at those meetings, but I think you can surmise that parole didn't see anything untoward when they visited the Alfreds at their approved residences. But we know that in the separate, in the secret residence, the high street apartment, there were drugs, cash all over the place. And so they had enhanced- Provokes a lot of questioning by the officer. Certainly. And it would provide reasonable suspicion to conduct a full search. So do you, do you argue then that the district court's emphasis on this being their home? You know, the district court says over and over again, and cites a bevy of Supreme Court cases about the centrality of the home, Jardines and other cases. Is it your argument that this really wasn't a home? It was some sort of stash house or base of illegal operations, or was it a home that also involved illicit activity? I certainly think it was a stash house where they were basing their drug trafficking activity. But even if I concede that it was their home, that doesn't preclude our argument here because someone's presence does not translate to an expectation of privacy if it's wrongful or unlawful. So in Jardines, although that was clearly a search based on the Supreme Court's ruling, the dog sniff around the curtilage of the home, if that individual was trespassing there because the owners had been away for six months and had no idea what was going on at the house, and he considered that to be his home, his presence there is still wrongful and unlawful, so he would not have an expectation of privacy in that property. What's the stopping point for wrongful? You know, there are a lot of things in the world that are wrongful that can be sort of in the de minimis category. For example, in the car, just to build on that, in the car example, if you have somebody who's driving without a license. So I pick up on that specific example because I think one of the stopping points that we've is the wrongfulness has to be tied to the actual possession or control over the property. So someone can have control over a vehicle even though they're not licensed, and so they would still have a reasonable expectation of privacy over the vehicle because their possession of the vehicle is not wrongful or unlawful. Why isn't the wrongful act here the failure to disclose as opposed to the possession? Is the possession of this apartment wrongful or is it the failure to disclose wrongful? Why aren't those two different things? Because the possession is wrongful because they never got authorization to live there. So it's not just a failure to disclose. I think the Alfreds try to cast it as such in their briefing. They couldn't just provide notice to the parole agents, hey, we're going to be moving to this separate apartment, and as long as they did that, they'd be, you know, good as gold in the new apartment. They actually had to they did not have authorization from parole to live there. That's why it's wrongful. In returning back to Judge Hardiman, your question about the home, I'll go back to Cortez Dutraville. Although that was not his home, he had been staying there for a number of days. He had his personal property there, and the court acknowledged in its opinion that typically under Fourth Amendment case law, he would have a reasonable expectation of privacy there. Yeah, but the district court distinguished that case by citing the fact that he was in violation of a court order. And here, these two parties are not in violation of a court order, right? Well, I think their parole conditions certainly stem from a court order, the imposition of their sentence. And then the parole conditions themselves, the order allows... But it's not self-executing like a court order, right? Well, once they agree to it, and they sign and affirmatively agree, okay, we're going to abide by these conditions. And the parole board, who has custody over them while they're on parole, gives them the ability and approves their release from prison. They have to abide by those conditions. You're saying that the parole board is parallel to the court because it has control over what happens when the violation is brought to its attention? I think that's correct. I think that's absolutely right. And again, they can be returned to prison unless proof, then somebody like Cortez Dutraville, if he violates the court order and is prosecuted for contempt, obviously the standard of proof, things like that, are a larger obstacle than they would be for parolees like the Alfords. I see my time's expired. If the court has no additional questions... Let me ask Judge Roth, before you sit down, if Judge Roth has any questions at this time for you. I have nothing. Thank you. All right. We'll hear you on rebuttal, Mr. Marchioli. Thank you. Let's hear from Attorney Lance. May it please the court, Kristen Lance on behalf of Mr. Dequan Altari Alford. By declining to appeal the district court's findings that the search in this case was unlawful and that the good faith exception does not apply, the government has conceded the unconstitutionality of the police conduct. The only question before this court today is whether the Alfords, as lawful tenants of a private home, are barred from challenging the unlawful intrusion into their home because they didn't disclose the residents to their parole officers. I think we can all agree that the district court provided a remarkably thorough opinion in this case, with dozens of pages devoted to standing alone. It was very comprehensive and thorough, but one thing that caught my eye was the emphasis on Robertson, the district court out of Connecticut. And the court, of course, distinguished the Northern District of New York decision in Melvin. These are really, as far as we can tell, the only two cases that are truly factually on point. Everything else is sort of analogous. Would you agree with that? I would agree. Okay. And what struck me about Robertson, which was also a pretty lengthy opinion, is that it doesn't once mention the word standing. And there's an early statement in Robertson to the effect that the government's arguments about reasonable expectation of privacy were not consistent with recent developments in case law, and then talked about property law. So if you could address that, that would be helpful, because there's sort of a challenging overhang that I perceive in this case, because we had cats for many years. And then, of course, the second Jones case with the tracker under the car came up where Justice Scalia wrote the majority and emphasized property principles, not just reasonable expectation of privacy. So help us sort through that, because if Robertson didn't even address standing, and we're here to see whether these two, your client and the other, have standing, where are we? I think there are a lot of cases that fail to distinguish between standing and the substantive Fourth Amendment reasonableness analysis. And I think that's because standing is so intertwined with whether the search is objectionable at all, and they don't really focus in on whether somebody can actually bring the challenge. I think that's true as a descriptive matter, but I'm not sure it's accurate as a matter of Supreme Court case law, because they do use standing. It's shorthand. It's not the same as constitutional standing. But I don't think the Supreme Court has told us that we should conflate the question of ability standing to challenge the search with the reasonableness of the search. Right. In my perspective, there's a significant difference between the standing and then looking at the reasonableness of the search. And I think that Jones and Jardines gave us a very clear understanding that when it comes to the property-based... The first Jones. Yes. 1960 Jones. Well, no, the second Jones. Well, the second Jones is a car case. It's... Right, but... And there was no question that Jones in the GPS tracker case, it was his vehicle. There was no question of legitimacy over the vehicle. Right. But what the court emphasized in that case is that you don't even need to go down the path of legitimacy and expectations of privacy when it comes to your property. Right. But that presupposed that it's your property, right? I mean... So long as... You're not... If someone owns a home, it's their property. Right. But if they're in prison and they escape, right, and they go to their home and they are pursued and caught there, is it your argument that that escapee has standing to reasonableness of the search because they're in, quote, their home? I think that that's probably one of the more difficult cases when you're looking at it from the property perspective. Generally, what you're saying is, is their presence on the property lawful? And you're focusing in on... Right. In my hypo, it's not lawful because he's supposed to be behind bars, right? Right. But in another sense, it is lawful because he owns the title of the home. Right. And that's perhaps why the Supreme Court has called that like a trespass on society. Okay. To try to kind of solve that complicated problem in that specific area. All right. Let's assume we're with you and this is not, quote, unlawful. Help us with the wrongful aspect of it. And let me give you a hypothetical to try to suss that out. Assume for a minute a municipality has an ordinance that requires lessees to be at least 18 years of age. And the reason that this municipality passed the ordinance is they're concerned about human trafficking. They don't want minors to be posting up in apartments, etc. A 16-year-old young lady who looks like she's 20 goes and rents an apartment. She's being human trafficked and prostituted by a gang. The... Assume that the authorities, the police, go into the apartment in flagrant violation of the Fourth Amendment, just a blatant violation. Does she have standing to challenge that search? I, of course, would argue that she does. She does. That they would have to get a warrant and go through the typical process to try to access the home. Just because she has standing, even though she violated the ordinance by renting a property, she was not by law authorized to rent. Right. You have to keep in mind that the standing is the right to just challenge the search. It doesn't necessarily make the search unlawful. And maybe there could be certain exigent reasons, specifically in that scenario with human trafficking involved, that they felt they needed to go in right away. But we certainly don't have that here. But why should society... So I respect the logic of your argument, but what I'm struggling with is it seems that step two of our analysis here, it's a given that your client had a subjective expectation. So we're dealing with whether that subjective expectation is one that society is prepared to recognize as reasonable. Correct? But only if we're looking at this from the perspective of the reasonable expectation of privacy, the... We'll assume we are for now. Okay. And that's what the district court did. The district court said the parties... The district mentioned the property angle and said, remember the opinion said, but there's another way. He talked about that. But then he said the parties have argued cats, so I'm going to focus on cats. And the district court did that because he concluded that we had not argued the property-based path to standing before the court. And while I think judges... But we can affirm for any reason. So we could choose that path. But stick with me. But we certainly didn't forfeit that argument. No, no, no. You didn't forfeit it. No. But stick with me on cats for a minute because assume that your client needs to show that the subjective expectation of privacy is one that society is prepared to recognize as reasonable. Isn't that fundamentally a policy choice where we're balancing your client's interest in not having somebody come into his apartment and society's interest in making sure that parolees actually live where they say they're going to live or, in my hypothetical, that criminal gangs don't get their... The 16-year-olds they're trafficking to... Absolutely. And that's exactly why the government wants you to take the cats path in this case. No, but I'm asking you to assume we are taking the cats path. And perhaps your argument is if we take the cats path, you're losing and you want to pivot to property, and we need to rule in your favor for that reason. If that's true, then say that. No, I totally agree with Brand's analysis when it comes to cats. But we would just suggest to you that this case can be solved quickly in just a few pages by using the foundational path, which is... The property. ...Alfred's property. All right. But I'm asking you again. I'm asking you to address my challenge to you, assuming that we are applying cats. Why should we say that society should recognize this property interest, this privacy interest, as reasonable in light of my hypothetical and in light of the government's obvious interest in making sure parolees live where they actually are supposed to be living? I think that society is prepared to recognize that parolees, like everybody else, has a right to enter into leases. And that to the extent they may be violating parole, that we have a system in place to address those violations. And that's with the parole system. You know, there is accountability. But isn't that... That's exactly what I'm getting at. Isn't the parole system that does allow parolees to get leases. We want them to get leases. We want them to reintegrate in society. But they are still laboring under the disability of a criminal sentence while they're on parole. And isn't it mission critical that they live only where they're approved to live? And that's partially for their own benefit. You don't want them back hanging out with the guys. You don't want them doing exactly what happened here. You want them living with grandma or a trusted friend or a sponsor or whatever. And within that parole system, they can treat these violations in different ways. And maybe this should be treated as more than a technical violation and be subject to a return to prison. I don't agree with that. I think most parolees have had... You know, they're struggling in this system. They tend to move around a lot. Sometimes it's an afterthought that they need to tell their parole officer that they moved because they move all the time. So I just want to make sure I understand. I think what I hear you saying is that affirmative misrepresentations about your residence to a parole officer doesn't have any effect on objective reasonableness. Is that what you're saying? I don't think it should affect your constitutional right to challenge a search. Is there any type of parole violation related to the home, in your view, that would extinguish a reasonable expectation of privacy? Not that would extinguish it that I can think of offhand. How about in drugs that are being allegedly kept in the apartment? Don't they have a right to come in and search then? The parole officer absolutely would have a right to go in and search with reasonable suspicion. But in this case, it was law enforcement who went into that home, having no knowledge that there were parolees living there, let alone that any violation may be occurring. Do you agree with your friends on the other side that the Katz inquiry is... Contemporary knowledge is irrelevant under the Katz inquiry. That is, they can look sort of from this omnipresent... Do you agree with that? Absolutely not. Not when it comes to the purpose for law enforcement entering the place. I think any search, we kind of start with what was the purpose and what level of suspicion was necessary. Did they need probable cause? Was it reasonable suspicion? Was it an exigent circumstance? But we always sort of define the bounds of the search and what law enforcement or parole officers can and cannot do based on why they were going there in the first place. So to retroactively justify a search based on things they didn't know anything about, seems like a slippery slope to me. All right. Thank you very... Anything further, Judge Roth? Nothing further. Thank you. All right. Thank you very much, Ms. Lance. Let's hear from Mr. Rimza. Good afternoon. My name is Edward Rimza. I represent Daquan Alteriki Alfred, who's the case. As Justice Frankfurter stated many years ago, that the safeguards of liberty are usually forged in cases that involve cases similar to this that involve allegations of illegal activity. But there's nothing in this case that would distinguish the parolees' rights under these facts in this case, that they lose their Fourth Amendment protection in this case. I'd like to address with some of my... Is it that they lose it or they never had it? With respect to this particular property, I'm pretty confident Mr. Marchioli would admit that your client had all kinds of rights as a parolee. But the argument as I understand it is that your client never had any rights in this particular property because from day one, that was an illicit property. That's what the argument is. That's right. Why should we recognize his subjective privacy interests or expectation as objectively reasonable? Well, for one, I think the law compels it with not only cases from the Supreme Court, but cases... Which Supreme Court? We don't want to run afoul of them. Which Supreme Court case compels it? Well, I think when you look at, to start with, Griffith and the fact that the Supreme Court carved out rights for parolees and probationers, that there's a lower reasonable expectation of privacy, but it doesn't wipe it out. And I think it starts with that. I think, Judge, in your own opinion in the Henley case that you authored several years ago was similar, where you recognize the fact that the search required a reasonable suspicion because there was not either a statute or a condition of parole, that the parolees diminished expectation of privacy has to arise from some valid legal source. And incidentally, in that Henley case, when I reread that case, the facts there also had that the parole officer went to the house several times. And I would note that the parole officer didn't violate Mr. Henley in that case. The parole officer was aware that- You mean because Mr. Henley had moved twice without informing him. Correct. Is that what you mean? Yeah. Right. And so the facts in that case, the issue that came up there, it only came up, the expectation of privacy came up years, literally years after the fact because of other indicia of unlawful activity at the residence, including smelling marijuana and people coming in and out and an informant telling them that there was illegal activity going on at the house. I also think it's important to note how we got here. And the fact of the matter is, you look at the record in this case, the government advancing the argument they're advancing in this appeal was really an afterthought because the suppression hearing was going so disastrously south for the government. And the fact of the matter is, had it been a strong argument, had this standing argument been the winning argument, they would have presented it at the outset. But it was really just an afterthought. That doesn't matter though. It's preserved. I understand it's preserved, Judge, but I think that the record certainly in the case does show the outrageous conduct of the police officer in the Franks hearing. But I would simply say that there isn't a single case regarding how you cut this up, whether, Judge, you talked about wrongfulness or unlawful and where do you draw the line? And frankly, that's the question. But I think in this case, the fact that a violation, well, let me withdraw that, there wasn't a violation. While they weren't permitted to live at this residence, the fact is that the parole officer testified it may not have resolved it in any violation. They may not have taken any action. Well, a discretionary decision to take action isn't the same thing as whether they did what they were supposed to do. They weren't allowed to live there. Correct. I agree with that. So it was wrongful, at least in some sort of basic moral sense, but I'm not sure that means it was unlawful. Does it matter? Is that the key distinction between wrongful and unlawful? Again, I think the question is how do you interpret it and how do you cut it up? I think the Cortez-Dutriville case is very different from a case like this, as you pointed out, because it did involve a court order. And I don't think you can- Yeah, but one part of that analysis, I have to confess, I was not persuaded by in the district court's thorough work here was to suggest that getting a PFA at some point in the past trumps current consent. I didn't understand that at all. It's not that unusual where people get PFAs in February and come June there's been a reconciliation or... I mean, it seemed obvious that Cortez had consent to be there. Right. But I think even though he may have had consent to be there- He was rightfully there. He wasn't wrongfully there. He wasn't even wrongfully there, much less... Well, I guess you'd say he was unlawfully there because it was in violation of the order. Right. He was doing something else. Again, the PFA, his violation of the PFA, which we all agree on, like the violation of the rules of parole in this case that we all agree on, doesn't mean that anything bad was going to happen to him. It would all depend on how the judge looked at the situation, right? Right. But I think there is a clear distinction between violating a PFA and committing a crime, an indirect contempt of some sort, as opposed to not listening to your parole officer who tells you what your approved residence is going to be. I think there's a big- But is that a crime? Do we even know if that's criminal or civil? Couldn't it be civil contempt? Is a PFA a criminal order? A PFA, I thought, was a civil order. No, a PFA, at least in Pennsylvania- The criminal order. ... if you violate, it's indirect criminal contempt up to six months in prison. So it does carry with it a potential jail sentence. So it is violating the law. And I guess- And the key difference is that's a judge in here, the parole officer's not a judge. I think it's a huge difference, yes. But why assume for a minute that we don't agree with you that there's Supreme Court precedent right on point that says that it's objectively reasonable for society to recognize this privacy interest? Assume you have to persuade us based on all of the facts. Why should we? I think why, and I know the government raised this, I think, in their reply brief. Why I think it's objectively reasonable, or why it should be, is that these policy arguments, these arguments involving balancing defendant's constitutional rights and protections as opposed to what's best for society, these are arguments that have been raised constantly. This June will be 60 years for Miranda. The Miranda decision will be 60 years old. Those are the same arguments they made 60 years ago, that they thought that guilty people would go free or defendants wouldn't confess anymore. But those are the same arguments that have been made and recycled over the years. And the fact is that the courts and law enforcement have learned to live with Miranda and learned to live with the Bill of Rights. Right. So all true, but tell us why it's objectively a good idea or objectively reasonable to empower parolees who are lying to their parole officers, living in illicit properties, to be able to even argue, to have the standing, Fourth Amendment standing to argue. Because I think the fact that he's, both of these individuals were living in this home, and this wasn't a stash house. The record reflects- There was criminal conduct there though. There was criminal conduct. Okay. And would you at least concede that it's more likely that a parolee who's living in a house the parole officer knows nothing about is more likely to engage in criminal activity there rather than in the property where the parole officer is coming by every so often and checking in? It would help, right? Right. Which is why I've been hammering this issue about objective reasonableness. Why would we set up a scheme that would encourage parolees to post up an unknown resident? Sure. So I think, Judge, if you look at it from the perspective that these individuals were just engaging in nefarious activities, and the record does not reflect the reasons why they were there. At least with my client, he had been living there for, the record didn't reflect how long. I know the testimony was that the parole officer testified, went to the residence that he was living, his authorized residence, and his aunt said, he hasn't been here for some time. But we don't know the whole backstory. That never came out. And I think to address your point directly is that I think it's objectively reasonable because of the fact that this is a home. And this is a place that they were living. This was not a stash house. They had clothes there. There were food in the refrigerator. This was their residence. This was their home. Regardless of the reasons why, how they got there. They were permitted to be there. They had a lease. They had a lease. Let me try one other hypothetical on you. A man comes out of prison. He's in a halfway house for the last six months of his sentence. And he escapes from the halfway house and he goes to mom's house. Mom's happy to see him. Mom lets him in. He lives with mom. And he lies to mom about, or she thinks he doesn't even lie. She just thinks the sentence is over, right? Her home is violated, blatant violation of the fourth amendment. And she's shocked when they come in, they find, they go up and they find drugs in his room. She obviously could challenge the unconstitutional search and get the evidence suppressed, right? But in my hypothetical, when she finds out why they're there and she finds out her son has absconded from the step down in the halfway house and she decides not to challenge the search, is it objectively reasonable for him to have standing to challenge that search? Can I ask a question just on the facts? Sure. Yeah, sure. I give you credit for that because one of the most annoying things for us is when people challenge the hypothetical, but I welcome clarification of the hypothetical. Oh, great. Thank you, Judge. Fire away. So who is the person coming in to conduct the search of the residence? It's police. And if it's police- It's not a parole officer. It's just like this case. It's police. It's a blatant fourth amendment violation. The police have no, and let's face it, one of the reasons we say the home is her castle and it's primacy in this area is because we don't want them going into people's houses. And here, they have plainly violated this mother's rights. But she is so upset that he's continuing to lie and dissemble and she's so upset that he had drugs in her house, she does not challenge the search. I think, again, it's one of those things, how close do you slice it? How far do you go? But in your hypothetical, I think one of the distinguishing factors, I think the Roy case from the Second Circuit was a fugitive. And I think there are questions because in addition to him absconding and leaving in your hypothetical, he's also something else. He's also a fugitive from justice. He's just leaving a halfway house. He didn't bust out of prison. He's kind of like a parolee. I mean, he's finishing up his sentence and things go bad. And again, in your hypothetical, we're talking about probable cause for the police to just go in without a warrant? They had no probable cause. Assume it was the Keystone Cops and extremists. It was just the most obvious constitutional violation. We're talking about standing here. Because here, nobody's challenged that there were constitutional violations here too. So it's all about standing. So I think that under those circumstances, again, I would still probably suggest that there would be an objectively reasonable expectation of privacy. Again, some of the- Because he was permitted to be in Mom's house. He was permitted to be in Mom's house. And he wasn't a fugitive. And he was a fugitive. Judge Roth, any questions at this time? I have no further. Thank you. All right. Thank you very much, Ms. Lorenzo. Appreciate it. Rebuttal, Mr. Marchioli. Thank you, Your Honor. I'll start off with that hypothetical about the individual who leaves the halfway house. It's not surprising, obviously, the government's position is that person would not have a reasonable expectation of privacy. The hypothetical sounds a lot like the Second Circuit's case in Edelman. I think it was a very similar situation. And that- To go off of that, I think that also gets to the distinction, Judge Hardiman, that you were asking between what's the difference between unlawful and wrongful. And in that particular situation, that individual has almost certainly committed a new crime by leaving the halfway house. He's escaped from the halfway house. But by being at the mother's residence, he's not committing a crime. That crime of escape has already been consummated. And so, as a technical matter- Is that the way you want us to write an opinion that says, basically, once you violate the rule or the law, then you're just out? You just can't make a Fourth Amendment argument? No, because it has to be tied to whether the person's presence on that particular piece of property is wrongful. So, for instance, in your hypothetical, if the halfway house escapee decides he thinks better of it and returns back to the halfway house, the game's not over for him. He would still have a reasonable expectation of privacy reduced because he's serving a criminal sentence at a halfway house. But he would still have potentially Fourth Amendment protections. But that sounds like the privacy right runs with the land, not the person. I think the privacy right runs with the person's connection to the specific piece of property. Well, these guys had leases. They had valid leases. Right. But again- Or were they invalid leases? Were they void ab initio? We're not making the contention that they were invalid. But I'll return to a point that you were having a discussion with Ms. Lance about. The property right in and of itself is not determinative. The Supreme Court has said that time and again. Even going back to Jones' 1960 case, that was pre-CATS. And the Supreme Court said property rights are not determinative. And then post-Jones 2012 and post-Jardines, the Supreme Court in cases like Byrd and Carpenter, they've continued to say property rights are not determinative. In Jones and Jardines, as we explained in our briefing, those are not standing cases. In Jones, the Supreme Court expressly said it was not going to consider whether Mr. Jones had some type of reduced expectation of privacy in the vehicle because he wasn't actually the vehicle's registered owner. And then as we point out in the briefing, post-Jones and post-Jardines in Grady, the court applies the rule from Jones and Jardines and said that there was a search there, but says it's left for the lower courts to determine whether the expectation of privacy was reasonable. One other point along these lines, if I can continue, Your Honor, is in Byrd, like I mentioned, the Supreme Court said property rights are not determinative. And then even in Justice Thomas' concurrence that Justice Gorsuch joined, where he's suggesting some openness to a purely property-based analysis, he said even under that analysis, the court would likely still need to consider whether the presence on the property is unlawful or, I think he said, illegal or otherwise wrongful. Again, that goes back to whether there's even a distinction between those two terms. Does all that, Mr. Marchioli, mean that you lose the case if we apply property standards instead of cats? I think if the court were to go solely off of property, yes, we would likely lose. But I don't think that approach can be squared with what the Supreme Court has said, again post-Jones and Jardines, and it can't be squared with what this court has done either. Cortez Dutraville came after Jones and Jardines, yet the court there considered whether there was a reasonable expectation of privacy, even though that defendant, as a matter of property law, was completely justified in being at that piece of property. Unless there are any other questions, we'd ask the court to reverse the district court's order. Judge Roth, anything further? Nothing further, thank you. All right, thank you, Mr. Marchioli. Thank you, Ms. Lance and Mr. Rimza. The case was very well briefed and argued. The court will take the matter under advisement.